**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| QUANSA THOMPSON | * |
| *On Behalf of Herself and* | * |
| *All Others Similarly situated* | * |
| PLAINTIFF | * |
| v. | *   Case No.: 09-1942 (JDB) |
| LINDA AND A., INC t/a | * |
| THE HOUSE, *et al*. | * |
| DEFENDANTS. | * |

**PLAINTIFF'S MOTION TO FACILITATE IDENTIFICATION
AND NOTIFICATION OF SIMILARLY SITUATED EMPLOYEES**

Plaintiff Quansa Thompson ("Plaintiff"), by and through undersigned counsel, hereby moves this Honorable Court to facilitate the identification and notification of similarly situated employees pursuant to the collective action provision of the Fair Labor Standards Act ("FLSA"), and, in support thereof, states as follows:

## I. PROCEDURAL BACKGROUND

On about October 9, 2009, Plaintiff filed the above-captioned action, on her own behalf and on behalf of other similarly situated colleagues, against their employers seeking the recovery of unpaid minimum wage under the FLSA, the D.C. Minimum Wage Act, and for other relief.

## II. FACTUAL BACKGROUND

Plaintiff worked for Defendants from approximately April 2004 through September 26, 2009. *See* Declaration of Quansa Thompson, attached hereto as Exhibit 1 ("Plaintiff Declaration"), at ¶ 2. Defendants Linda & A, Inc. t/a The House ("The House") and Darrell Allen ("Mr. Allen") (together "Defendants"), are in the business of operating a night club in the

District of Columbia. During her employment with Defendants, Plaintiff was not compensated at the proper minimum wage rate as prescribed by the FLSA. *Id*. at ¶ 4. Throughout the time Plaintiff was employed by Defendants, Plaintiff worked exclusively as a dancer. *Id*. at ¶ 3.

During Plaintiff's term of employment, Plaintiff was paid approximately $40 in cash per night for the nights that she danced. Plaintiff regularly worked a ten (10) hour dance shift per night, approximately four (4) nights per week. While in Defendants' employ, Plaintiff's regular rate of pay was approximately $4.00 per hour ($40 per day/10hrs/night). *Id*. at ¶ 4.

However, Defendants routinely took unexplained deductions from Plaintiff's wages. Such deductions included, but were not limited to, late fees, fines for calling in sick, and "late stage" fees for being late getting on stage. Defendants never provided Plaintiff with a paycheck, instead Defendants paid Plaintiff in cash. Defendants never indicated to Plaintiff in writing what, if any, deductions were being made from her gross pay, and Defendants never maintained any time records. *Id*. at ¶ 4.

Plaintiff has personal knowledge that other current and former employees of Defendants are similarly situated in that they; (1) danced for Defendants as exotic dancers at their club; (2) were paid a dance shift wage; (3) were paid in cash by Defendants; (4) and had their wages unlawfully withheld and were not compensated at the rate of the prescribed minimum wage or higher, as required by law.

Virtually all dancers who worked at Defendants' club during Plaintiff's period of employment were not being properly compensated at the minimum wage rate as required by law. Indeed, the failure to pay minimum wage by Defendants was a regular practice engaged in by Defendants. Victims of Defendants' unlawful pay practices include approximately twenty-five (25) other exotic dancers who worked with Plaintiff at Defendants' club who were not paid

properly. *Id*. at ¶ 6.

For the reasons set forth below, each of these employees, and others who have yet to be identified, are entitled to be notified about their legal rights under the FLSA as well as the existence of this lawsuit as a means of enforcing those rights.

**III.   LEGAL ARGUMENT**

    **A.   This Motion Should Be Granted Because the FLSA Authorizes Similarly Situated Employees to Litigate as a Class.**

Under 29 U.S.C. § 216(b) of the FLSA, "an action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves *and other employees similarly situated*." (emphasis added.) This Court is familiar with this procedure. As succinctly stated by this Court in *McNeil v. District of Columbia*, 1999 WL 571004 (D.D.C. Aug. 5, 1999) (Bates, J.), "Exercising this court's discretion to assist all persons who may have a legitimate claim [for unpaid overtime] to assert is the only course of action consistent with the broad remedial goal of [the] FLSA; reducing the defendant's potential liability by making plaintiffs' notification of other claimants as difficult as possible is not." *Id*. at *3.

For approximately sixty-five (65) years, Federal courts have been examining the extent to which one or more named plaintiffs must be "similarly situated" to the proposed class of unnamed plaintiffs in order for all of the plaintiffs to proceed before the court together as a collective action. In *Shain v. Armour & Co.*, 40 F. Supp. 488 (W.D. Ky. 1941), which involved a claim for unpaid overtime wages, the court thoroughly analyzed the "similarly situated" standard, and concluded as follows:

> The [FLSA] authorizes an employee to sue for himself 'and other employees similarly situated.' It is very comprehensive and inclusive; it contains no restrictions other than that the other employees be similarly situated. . . .

> *Employees may be similarly situated without being identically situated. The evident purpose of the Act is to provide one lawsuit in which the claims of different employees, different in amount but all arising out of the same character of employment, can be presented and adjudicated, regardless of the fact that they are separate and independent of each other.*

*Id*. at 490 (emphasis added).

In the years following the *Shain* decision, this same conclusion has been reached by numerous other courts, including this Court. *See*, *e.g.*, *Hyman v. First Union Corp.*, 982 F. Supp. 1, 7 (D.D.C. 1997); *Bradford v. Bed Bath & Beyond*, 184 F. Supp. 2d 1342, 1345 (N.D. Ga. 2002); *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002); *Schwed v. G.E. Co.*, 159 F.R.D. 373, 375 (N.D.N.Y. 1995); *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988); *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 443 (N.D. Ill. 1982); *Riojas v. Seal Produce, Inc*., 82 F.R.D. 613, 616 (S.D. Tex. 1979).

In *Hoffmann-LaRoche v. Sperling,* 493 U.S. 165, 169 (1989), the United States Supreme Court resolved a split among the circuits with respect to the role the courts should take in supervising the "opt-in" process and held that the district courts have discretion to implement § 216(b) by facilitating notice to potential plaintiffs. In *Hoffmann-La Roche*, the Supreme Court also made the following important pronouncements: (1) once an action is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way; *Id*. at 170-171; (2) it lies within the discretion of the trial court to begin its involvement early at the point of initial notice; *Id*. at 171; (3) by monitoring the preparation and distribution of the notice, the Court can insure that it is timely, accurate, and informative; *Id*. at 172; and (4) the district court has discretion, early in the litigation, to permit discovery of the names and addresses of employees to insure that such potential plaintiffs are promptly and accurately notified. *Id*. at 170; *see also Dybach v. State of*

*Fla. Dept. of Corrections,* 942 F.2d 1562, 1567-68 (11th Cir. 1991) (the remedial purposes are best served if the district court is deemed to have the power to give such notice to other protected members of the class provided the court is satisfied that there are other employees who desire to opt-in and who are similarly situated).

Significantly, "[t]he strict requirements of Rule 23 of the Federal Rules of Civil Procedure do not apply to FLSA 'collective actions,' and thus no showing of numerosity, typicality, commonality and representativeness need be made.  Rather, plaintiffs must meet only one threshold requirement: they must demonstrate that potential class members are 'similarly situated.'" *Levinson v. Primedia, Inc.*, No. 02 Civ.2222, 2003 WL 22533428, at *1 (S.D.N.Y. Nov. 6, 2003).  Moreover, the mere fact that the employees are categorized in a certain way by their employer[1] or that the employees may work in multiple locales[2] is irrelevant to the issue of whether or not they are similarly situated for purposes of a collective action under the FLSA.

    **B.**    **The Motion Should Be Granted Because the District Court is Authorized to Help Facilitate the Notification of Similarly Situated Employees.**

It is well-settled that "[d]istrict courts have the discretionary power to authorize the sending of notice to potential class members to inform them of the action and to give them the opportunity to participate by opting in." *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 237-38 (N.D.N.Y. 2002) (citing *Hoffmann-LaRoche v. Sperling*, 493 U.S. 165, 169-70 (1989)); s*ee also Kane v. Gage Merch. Serv., Inc.*, 138 F. Supp. 2d 212, 214 (D. Mass. 2001) (same).  Indeed, "it is 'unlikely that Congress, having created a procedure for representative

---

[1] *See*, *e.g.*, *De Asencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660, 663-64 (E.D. Pa. 2001) (court authorized notice to potential plaintiffs in unpaid overtime case despite fact that plaintiffs worked "at various production positions within [defendant's] two plants").

[2] In *Hyman v. First Union Corp.*, 982 F. Supp. 1 (D.D.C. 1997), the district court permitted an FLSA case to proceed as a collective action despite the fact that the proposed members of the class were from three different states – Virginia, Maryland, and the District of Columbia.  *See id*. at 4; s*ee also Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 307-08 (S.D.N.Y. 1998) (court allowed plaintiffs to notify similarly situated employees in unpaid overtime case even though employees worked at 15 different restaurants).

action [under the FLSA], would have wanted to prevent the class representatives from notifying other members of the class that they had a champion.'" *Cook v. United States*, 109 F.R.D. 81, 83 (E.D.N.Y. 1985) (citation omitted).

The rationale for this court-facilitated notification procedure was best explained by the United States Supreme Court in *Hoffmann-LaRoche v. Sperling*, 493 U.S. 165 (1989):

> A collective action allows [FLSA] plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [wrongful] activity. *These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate. Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties*.

*Id*. at 170 (emphasis added).

The United States District Court for the District of Columbia has granted collective action certification for Plaintiffs in several recent cases. *See, e.g*., *Hunter v. Sprint Corp.,* 346 F.Supp.2d 113 (D.D.C. 2004); *Chase v. AIMCO Properties, L.P.,* 374 F. Supp.2d 196 (D.D.C. 2005); *McKinney v. United Stor-All Centers, Inc.,* 585 F.Supp.2d 6 (D.D.C. 2008); *Lindsay v. Government Employees Ins. Co.,* 251 F.R.D. 51, (D.D.C. 2008). In each instance, this Court held that the threshold commonality was satisfied, and common issues predominated, and therefore certification was appropriate under the FLSA. In fact, Judge Leon of this Court granted an identical motion filed by counsel for Plaintiff in a recent case, *Kumara v. JAAM, Ltd. t/a Parklane Cleaners, et al.,* RJL-CV-06-430.

      **C.**    **The Motion Should Be Granted Because Plaintiff's Burden of Proof at this Stage is "Modest".**

In making the "similarly situated" determination, most courts employ a two-step procedure which involves an initial assessment as to whether notification of similarly situated

employees is warranted under the circumstances, and a subsequent, more finalized determination regarding the management and resolution of the claims filed by those employees who, having been so notified, actually elected to seek redress before the court. This procedure was summarized by the United States District Court for the Southern District of New York:

> Once the Plaintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff: "[T]he Court need not evaluate the merits of [a plaintiff's] claims in order to determine that a definable group of 'similarly situated' plaintiffs" exists. "[T]he court need only reach a *preliminary* determination that potential plaintiffs are 'similarly situated.'" Certainly the Plaintiff must still prove at trial that the positions at issue actually qualify as non-exempt under the FLSA. But that is not the inquiry to be answered in deciding this motion. The ultimate determination regarding the merits of the case, and whether the class is properly situated -- which requires a more "stringent" inquiry -- is made later in the litigation process, after more thorough discovery.
>
> Here, I determine only that notice may be sent to those people who, at this very preliminary stage in the litigation, might be potential plaintiffs. I am not determining that those being notified "are, in fact, similarly situated" to the Plaintiff, and I make no determination regarding the legal rights and responsibilities of the parties. Again, the Plaintiff's burden for proving that he is similarly situated to these potential plaintiffs is minimal for this preliminary determination -- a determination that can be modified or reversed after discovery is complete. Should it become clear later that the parties who have opted-in are not similarly situated to the Plaintiff here, I will make any rulings that are necessary and appropriate to ensure that the case is properly formed.[3]

*Gjurovich*, 282 F. Supp. 2d at 96 (emphasis in original) (citations omitted); *see also Goldman v. Radio Shack Corp.*, No. 2:03-CV-0032, 2003 WL 21250571, at *8 (E.D. Pa. April 16, 2003) (the first stage of the two-step procedure "requires a lax showing of 'similarly situated'"); *Carter*, 2003 WL 23142183, at *3 ("Before notice is authorized, the court is not required to come to a 'final determination' that the similarly-situated requirement has been met.").

---

[3] The New York court then noted that "should discovery reveal that plaintiffs in fact are not similarly situated, or that only plaintiffs who worked in the same . . . [location] or who held the same job type are similarly situated, I may later decertify the class, or divide the class into subgroups, if appropriate." *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 96 n.1 (S.D.N.Y. 2003) (quoting *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998)).

Thus, under the current circumstances of the instant case, where Plaintiff merely seeks the identification of and notification to prospective class members at an early stage in the litigation, Plaintiff "need only 'mak[e] a *modest* factual showing sufficient to demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Roebuck*, 239 F. Supp. 2d at 238 (emphasis added) (quoting *Realite*, 7 F. Supp. 2d at 306); *see also Pritchard*, 210 F.R.D. at 596.  In other words, "plaintiffs need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist."  *Schwed*, 159 F.R.D. at 375-76; *see also Severtson v. Phillips Beverage Co.*, 141 F.R.D. 276, 278 (D. Minn. 1992) ("plaintiffs [need only] come forward with evidence that establishes a colorable basis for their claim that the potential plaintiffs are similarly situated").

The reason for such a lenient burden is that "a strict standard of proof on the plaintiffs at this stage would unnecessarily hinder the development of collective actions and would undermine the 'broad remedial goals' . . . of the FLSA."  *Tucker v. Labor Leasing, Inc.*, 155 F.R.D. 687, 690 (M.D. Fla. 1994) (quoting *Garner v. Searle Pharm. & Co.*, 802 F. Supp. 418, 422 (M.D. Ala. 1991)).  Accordingly, "[a]t this initial 'notice stage,' the court usually relies 'only on the pleadings and any affidavits that may have been submitted'" in ruling on motions like the one being presented by Plaintiff herein.  *Kane*, 138 F. Supp. 2d at 214 (citations omitted); *see also Mooney v. Aramco Servs., Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995).

Finally, it is important to note that prompt notification of the potential class members is critical in that, unlike a Rule 23 class action, the statute of limitations is not tolled for those potential class members by the filing of the present Complaint.  *See* 29 C.F.R. § 790.21(b) (in collective actions under the FLSA, unnamed plaintiffs are not deemed to have commenced the

action until such time as his/her written consent to become a party plaintiff is filed in the court).

      **D.    The Motion Should Be Granted Because Plaintiff Has Met Her Burden of Demonstrating that Other Employees Were "Similarly Situated" With Respect to their Unpaid Minimum Wage.**

As set forth above and in Plaintiff's Declaration attached hereto, Plaintiff was paid $40.00 (or less) in cash every night for approximately ten (10) hours of work as a dancer. Plaintiff was not properly compensated under the FLSA. In addition, as detailed in Plaintiff's Declaration, there are other dancers who worked at Defendants' club with Plaintiff who also were not properly paid minimum wage as required by the FLSA. Accordingly, it is proper and consistent with the spirit and purpose of the FLSA for this Court to notify all putative opt-in plaintiffs of their right to proceed against Defendants to recover unpaid wages pursuant to the law.

**IV.    CONCLUSION**

It is abundantly clear that named plaintiffs in a lawsuit to recover unpaid minimum wage are permitted, with court approval, to provide notice of the suit to those potential plaintiffs who worked in a class of similarly situated employees. This case calls for such action.

WHEREFORE, Plaintiff hereby respectfully requests that this Honorable Court:

    A.    Enter an Order compelling Defendants to produce to Plaintiff's counsel, within fifteen (15) days, a list of the full name, last known residential address, residential phone number, work address, work phone number, date of birth, and e-mail address of each and every individual who worked as a dancer for Defendants at any time since October 2006;

    B.    Approve and sign the attached "Important Notice" form for future use in notifying the class of potential plaintiffs;

    C.    And for all other and further relief that the nature of this cause may require.

Respectfully submitted,

_____/s/_____
Philip B. Zipin, Bar No. 367362
Gregg C. Greenberg, Bar No. MD 17291
The Zipin Law Firm, LLC
8403 Colesville Road, Suite 610
Silver Spring, Maryland 20910
Phone: 301-587-9373
Fax: 301-587-9397
Email: pzipin@zipinlaw.com
　　　　ggreenberg@zipinlaw.com

*Counsel for Plaintiff*