**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| QUANSA THOMPSON, *et al.*, |
| Plaintiffs, |
| v. |
| LINDA AND A., INC t/a THE HOUSE, *et al.*, |
| Defendants. |

Civil Action No. 09-1942 (BAH)

**MEMORANDUM OPINION**

Five exotic dancers brought this action against the owners and operators of "The House,"
"an exotic gentlemen's club in Washington, D.C. featuring nude female dancers."  Mem. in
Supp. of Pls.' Mot. for Partial Summ. J. ("Pls.' Mem.") at 1.  The House classified its dancers as
independent contractors, rather than employees, and, accordingly, did not pay them minimum
wage.  The plaintiffs argue that they were employees entitled to minimum wage under the federal
Fair Labor Standards Act as well as the District of Columbia labor laws.  The plaintiffs have
moved for partial summary judgment on the issue of the defendants' liability.  The defendants
oppose that motion and have also moved to dismiss three of the plaintiffs on procedural grounds.
For the reasons explained below, the Court grants the plaintiffs' motion for partial summary
judgment and denies the defendants' motion to dismiss.

## I.     BACKGROUND

Plaintiff Quansa Thompson initially filed this action on October 13, 2009.  Complaint,
ECF No. 1.  On behalf of herself and all others similarly situated, Plaintiff Thompson filed an
amended complaint on November 9, 2009 naming the defendants Linda and A. Inc., trading as
"The House," and Darrell Allen (collectively, the "defendants").  Amended Complaint ("Am.

Compl.") ¶¶ 1-2.  Defendant Allen is the President of The House and was Vice-President and a

manager of The House during the period in which plaintiffs' claims arose.  Pls.' Statement of

Material Facts Not in Dispute ("SMF") ¶¶ 1-2; Pls. Mem., Ex. 9, Defs.' Resp. to Pls.' Interrog.

No. 2.  The House's corporate entity, Defendant Linda and A. Inc., was wholly owned by Darrell

Allen's father, James Allen, who was President of The House until his death on June 3, 2009.

Defs.' Resp. to Pls.' Interrog. No. 2.  Defendant Allen advanced from Vice-President to

President of The House shortly after his father's death.  *Id.*

The Amended Complaint alleged that The House paid the plaintiff approximately $40 per

ten-hour shift of exotic dancing, and that she regularly worked ten-hour shifts four nights a week.

Am. Compl. ¶ 6.  The Amended Complaint also alleged that the defendants took unexplained

deductions from the plaintiff's wages, including late fees, fines for calling in sick, and stage fees.

*Id.* ¶ 8.  The plaintiff alleged that the defendants therefore violated the minimum wage provisions

of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206(a)(1), the D.C. Minimum Wage

Revision Act of 1992 ("DCMWA"), D.C. Code §§ 32-1001 *et seq.*, and the D.C. Wage Payment

and Wage Collection Law ("DCWPCL"), D.C. Code §§ 32-1301 *et seq.* Am. Compl. ¶¶ 11-22.

Both defendants are alleged to be liable as "employers" under the FLSA, DCMWA, and

DCWPCL.  *Id.* ¶ 2.  The plaintiff has also alleged a common law quantum meruit claim.  *Id.* ¶¶

23-27.

The defendants answered the Amended Complaint on November 27, 2009.  ECF Nos. 3-

4.

Plaintiff Thompson filed her suit on behalf of herself and other similarly situated

employees pursuant to provisions of the FLSA that authorize similarly situated employees to

litigate collectively.  *See* 29 U.S.C. § 216(b).  On May 6, 2010, this Court issued an Order

directing the defendants to provide information that would facilitate the identification of other similarly situated plaintiffs. *See* Order, ECF No. 15 (Bates, J.). The Order attached an approved Notice and "Consent to Join Lawsuit" form that prospective plaintiffs were instructed to return by July 5, 2010. *Id.*

Thereafter, four additional plaintiffs filed consents to join the lawsuit: Lakisha Colbert a/k/a "Shiver" on June 10, 2010; Eirene Lane a/k/a "Wild Cherry" on August 16, 2010; Jacemyein Morales a/k/a "Chyna" on September 1, 2010; and Tamika McKay a/k/a "Cherokee" on September 16, 2010. Thus, three of the additional plaintiffs filed their consents after the July 5, 2010 deadline set by the Court.

The parties in this case have conducted discovery, which closed on November 22, 2010.

Before the Court are the plaintiffs' motion for partial summary judgment on the issue of the defendants' liability and the defendants' motion to dismiss plaintiffs Lane, Morales, and McKay for failure to file their consents to join the lawsuit in a timely fashion.

## II.    DISCUSSION

### A. Defendants' Motion to Dismiss

### 1. Statutory Framework

The FLSA authorizes a plaintiff to sue on behalf of herself and any "other employees similarly situated." 29 U.S.C. § 216(b). This cause of action, known as a "collective action," is not subject to the numerosity, commonality, and typicality rules of a class action under Federal Rule of Civil Procedure 23. *Hunter v. Sprint Corp.*, 346 F. Supp. 2d 113, 117 (D.D.C. 2004). "Instead, a collective action has only two threshold requirements: [T]he plaintiff must show that she is similarly situated to the other members of the proposed class, and those other members

must 'opt in' to the proposed class." *Id.*; *see also McKinney v. United Stor-All Centers, Inc.*, 585 F. Supp. 2d 6, 7-8 (D.D.C. 2008).

"To determine whether a class should be certified under the FLSA, a court will usually proceed in two steps." *Hunter*, 346 F. Supp. 2d at 117. At the first step, plaintiffs must make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* (quotation omitted). If the plaintiff makes that showing, the class is "conditionally certified" and the members of the class are given notice of the collective action and an opportunity to "opt in" to the litigation. *Id.*; *see also* 29 U.S.C. § 216(b). The case then proceeds as a collective action through the discovery period. *Hunter*, 346 F. Supp. 2d at 117. "The second step of the analysis occurs at the close of discovery, when the defendant may move to decertify the class in light of the record that was developed during the discovery period." *Id.* At this point, the Court makes a factual finding as to whether the proposed class members are similarly situated. *Id.*

"For each plaintiff who opts in to the case after the filing of the complaint, the action is not considered commenced for purposes of the statute of limitations until the date on which the plaintiff's written consent is filed with the court." *Robinson-Smith v. Gov't Emps. Ins. Co.*, 424 F. Supp. 2d 117, 119 (D.D.C. 2006) (citing 29 U.S.C. §§ 256, 255(a)). Under the FLSA statute of limitations, a plaintiff must sue within two years of when the action accrued or, in the case of a willful violation, within three years. *Id.* at 118-19 (citing 29 U.S.C. §§ 216(b), 255).

## 2. Defendants' Arguments

The defendants have moved to dismiss plaintiffs Eirene Lane, Jacemyein Morales, and Tamika McKay "for failure to timely join in Quansa Thompson's Complaint in violation of the

time standard set by this Court."[1]  Defs.' Mot. to Dismiss at 1.  As noted above, the Court's May

6, 2010 Order established a deadline of July 5, 2010 for plaintiffs to opt-in to this action, and

plaintiffs Lane, Morales, and McKay filed their opt-in consents after that deadline.  *See id.*  The

motion to dismiss states that "[t]he Defendant is severely prejudice [sic] in its ability to defend

this matter, and to take advantage of the defense of the statute of limitations if the definitive date

for joining the lawsuit is not enforced. Discovery is closed and the Court's Order is rendered

meaningless if the three Plaintiffs are allowed to remain in the case."  *Id.* at 2.  The motion to

dismiss also states that "[o]f equal significance to their failure to comply with the deadline is

their participation as Plaintiffs in other litigation with identical claims raised in this litigation

[sic]."  *Id.* (citing Case Nos. 8:10-cv-02261 and 8:10-cv-02421 in the United States District

Court for the District of Maryland and Case No. 10-cv-01591 in the United States District Court

for the District of Columbia).

     The Court has briefly reviewed the court filings in the other actions cited by the

defendants and finds that those cases are not identical to this action.[2]  Those cases involve

similar claims by some of the plaintiffs here against different putative employers.  The factual

assertions the plaintiffs advanced in those actions could be relevant to their claims of liability

and damages here if, for example, the plaintiffs claimed to be two or three places at the same

time.  That is not what the defendants allege here, however.  The defendants point to no authority

that would support their apparent position that plaintiffs cannot sue different defendants for

violating the same laws.  The fact that the plaintiffs have brought other, similar lawsuits is

irrelevant to the defendants' motion to dismiss this action.

---

[1] The defendants bring their motion pursuant to "Rule 12 of the Federal Rules of Civil Procedure."  Defs.' Mot. to
Dismiss at 1.  The defendants do not otherwise identify any rules or case law in support of their motion.
[2] The Court may take judicial notice of public records like docket sheets and other court documents.  *In re Fed. Nat'l
Mortg. Ass'n Sec., Derivative, and ERISA Litig.,* 725 F. Supp. 2d 159, 162 n.1 (D.D.C. 2010).

Defendants' suggestion that they will be prejudiced by permitting the late-filing plaintiffs to remain in the lawsuit because "[d]iscovery is closed" is also meritless.   The defendants deposed all of the late-filing plaintiffs during discovery.   *See* Pls.' Opp'n to Defs.' Mot. to Dismiss at 1-2.   As the plaintiffs point out in their opposition, the defendants did not lodge any objection with the Court at the time that these plaintiffs filed their opt-in notices and instead waited until after discovery had closed to file a motion to dismiss.   *Id.*   Since the defendants not only had an opportunity to take discovery from these plaintiffs, but fully availed themselves of that opportunity, the defendants can hardly claim prejudice simply because discovery was closed at the time they filed their motion to dismiss.

The defendants' statute of limitations argument is also misplaced.   The FLSA statute of limitations is two years from when the action accrued or, in the case of a willful violation, three years.   29 U.S.C. § 255.   The limitations period runs for each individual plaintiff until the date on which that plaintiff's written consent is filed with the court.   *See* 29 U.S.C. § 256.   The motion to dismiss asserts that "[t]he Defendants are deprived of the Statute of Limitations retroactive to the deadline for joining in the Complaint. If allowed to stand Plaintiffs actions translate in substantial economic loses otherwise avoided by the application of the statute of limitations [sic]."   *Id.* at 4.   Defendants' argument appears to presume that some form of tolling would apply to the statute of limitations for the plaintiffs' claims, such that the late-filing plaintiffs would be deemed to have joined this lawsuit prior to the actual dates on which they filed their consents. This presumption is incorrect.   While the filing of a class action under Rule 23 tolls the applicable statute of limitations for putative class members, *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 353-54 (1983), no such tolling rule applies to FLSA collective actions and the plaintiffs have not requested any equitable tolling.   *See McKnight v. D. Houston, Inc.,* No. H-

6

09-3345, 2010 WL 4806869, at *11 (S.D. Tex. 2010). The statute of limitations period for each individual plaintiff would therefore run until the actual date on which the plaintiff's written consent was filed with this Court. 29 U.S.C. § 256; *see also Robinson-Smith*, 424 F. Supp. 2d at 119, 123-24 (denying plaintiffs' request for equitable tolling but accepting late-filed FLSA opt-in consents as of the date of filing with the Court). Accordingly, the defendants' ability "to take advantage of the defense of the statute of limitations" would not be prejudiced if the Court accepts the late-filed consents.[3] Defs.' Mot. to Dismiss at 2.

The Court finds that the untimely opt-in consents should be accepted as filed as of the date that they were submitted to the Court. "The FLSA provides for the opt in procedure, but does not specify when a person must opt in to a collective action." *Robinson-Smith*, 424 F. Supp. 2d at 123. Courts in this district have adopted a "flexible standard" as to the opt-in procedure. *Id*. In *Robinson-Smith*, the court permitted the untimely filing of opt-in consents where the opt-in deadline was "chosen by the Court in its discretion and [without constraint] by any considerations other than the practicalities of the case and setting an appropriate deadline so that discovery could proceed." *Id.* The circumstances here are similar. Moreover, the number of additional plaintiffs here is relatively small and permitting the untimely filing of the consents will not delay discovery, which has already closed and in which the late-filing plaintiffs fully participated. Therefore, the Court concludes that the continued inclusion of plaintiffs Lane, Morales, and McKay in this action is "consistent with the statute and is within the Court's discretion." *Id.*

The defendants' motion to dismiss is accordingly denied.

---

[3] The Court will assess the extent to which any of plaintiffs' claims for damages may be barred by the statute of limitations during the Court's consideration of damages at a later phase in this litigation.

**B. Plaintiffs' Motion for Partial Summary Judgment**

**1. Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" based upon the pleadings, depositions, and affidavits and other factual materials in the record. Fed. R. Civ. P. 56(a), (c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court must view all inferences in a light most favorable to the non-moving party. *Tao*, 27 F.3d at 638 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 255 (1986)). The burden is on the moving party to demonstrate that there is an "absence of a genuine issue of material fact" in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In this case, the defendants broadly assert that there are disputed issues of material fact that preclude entry of partial summary judgment for the plaintiffs. *See* Defs.' Opp'n to Pls.' Mot. for Partial Summ. J. ("Defs.' Mem.") at 2. In asserting the existence of disputed issues of fact, however, the defendants' opposition to the plaintiffs' motion for summary judgment generally fails to comply with the standards set forth in Federal Rule of Civil Procedure 56. Under Rule 56(c), a "party asserting that a fact . . . is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, . . . affidavits or declarations . . . or other materials . . . or [by] showing that the materials cited [by the moving party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1).

In responding to the plaintiffs' Statement of Material Facts Not in Dispute, which is quite brief, the defendants have merely replied to each paragraph with a simple, one-word response of "Admitted" or "Denied."   *See* Defs.' Mem. at 2.   The defendants' bald denials of the plaintiffs' assertions are insufficient to establish a dispute of fact under Rule 56, which requires the defendants to cite conflicting parts of the record or otherwise demonstrate that the parts of the record relied upon by the plaintiffs do not establish the absence of a genuine dispute.   Fed. R. Civ. P. 56(c); *see also* Local Civil Rule LCvR 7(h)(1) ("An opposition to [a summary judgment motion] shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement."). The defendants also have not submitted any affidavits, deposition testimony, or any other factual record materials to the Court for consideration.   Under Rule 56(e), if "a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion . . . [or] issue any other appropriate order." Fed. R. Civ. P. 56(e).   Since the plaintiffs' reply memorandum, which was filed three months ago, identified the aforementioned deficiencies in the defendants' opposition, and the defendants have not moved to supplement their filings, the Court will treat all of the factual assertions in the plaintiffs' Statement of Material Facts Not in Dispute as undisputed.[4]   *See* Pls.' Reply to Defs.' Mem. in Opp'n to Pls.' Mot. for Partial Summ. J. at 1-2.

---

[4] In any event, the defendants only denied three out of the fourteen paragraphs of the plaintiffs' statement of undisputed facts – paragraphs 6, 13, and 14.   Paragraph 6 states that "Mr. Allen also enforced other requirements, such as no 'cussing,' fighting, biting, scratching, and no drugs.   He also 'fined' Plaintiffs a monetary amount if they were late on stage, or if they were sexually touching one another on stage."   SMF ¶ 6.   Paragraph 13 states: "If Plaintiffs were late to work they were 'fined' a monetary amount by Defendants.   If Plaintiffs were late getting on

**2.  Statutory Framework**

The FLSA requires every "employer" to pay "each of his employees" a minimum wage.

29 U.S.C. § 206(a).   The amount of the minimum wage under the FLSA has ranged from $5.85

to $7.25 for the time period between July 24, 2007 and the present.   *Id.*

The DCMWA sets the District of Columbia minimum wage to an amount equal to the

federal minimum wage plus one dollar.   D.C. Code § 32-1003.   The DCWPCL establishes

requirements for the payment of earned wages.   *See* D.C. Code § 32-1301 *et seq.*   With respect to

employers' liability, these District of Columbia statutes are construed consistently with the

FLSA.   *See Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 1, 5 n.2 (D.D.C. 2010); *Del Villar v.*

*Flynn Architectural Finishes*, 664 F. Supp. 2d 94, 96 (D.D.C. 2009); *see also* D.C. Code § 32-

1002 (defining employ, employer, and employee).   Accordingly, determinations of employer or

employee status under the FLSA apply equally under the District of Columbia wage laws.

As noted above, the plaintiffs brought this action as a collective action under the FLSA.

After discovery concludes in such an action, the Court must make a factual finding as to whether

the proposed class members are similarly situated.   *Hunter*, 346 F. Supp. 2d at 117.   Here, the

defendants have not challenged the plaintiffs' similarly situated status, and, based on the record

evidence, the Court finds that the plaintiffs are similarly situated because they (1) worked in the

same department, division, and location of the employer, (2) they all advance similar claims, and

(3) they seek substantially the same form of relief.   *See id.* at 119.

**3.  Plaintiffs' Arguments for Partial Summary Judgment**

Plaintiffs move for summary judgment on three issues.   The plaintiffs seek a judgment

that (1) they were "employees" subject to the FLSA and not independent contractors; (2) that the

---

stage, they were fined." *Id.* ¶ 13.  Paragraph 14 states: "At the end of the night, Plaintiffs had to pay Defendants,
and pay the DJ." *Id.* ¶ 14.

defendants, including Defendant Allen, were the plaintiffs' "employers" under the FLSA; and (3) that they are entitled to liquidated damages. The Court will address these three issues in turn.

### a. The Plaintiffs' Status as Employees or Independent Contractors

The FLSA defines "employee" as "any individual employed by an employer." To "employ" includes "to suffer or permit to work." 29 U.S.C. §§ 203(e)(1), 203(g). The definition is necessarily a broad one in accordance with the remedial purpose of the statute. *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 10 (D.C. Cir. 2001). To determine an individual's employment status under the FLSA, courts apply an "economic reality" test that considers various factors, such as: "(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship and (5) the extent to which the work is an integral part of the employer's business." *Morrison*, 253 F.3d at 11. "No one factor standing alone is dispositive and courts are directed to look at the totality of the circumstances and consider any relevant evidence." *Id.* "[T]he final and determinative question must be whether the total[ity] of the [circumstances considered] establishes the personnel are so dependent upon the business with which they are connected that they come within the protection of the FLSA or are sufficiently independent to lie outside its ambit." *Id.* (quoting *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311-12 (5th Cir. 1976)).

The determination of "employee" status under the FLSA is a question of law, although it depends on subsidiary factual determinations. *Id.* at 10 n.3. Employee status can be determined by the district court on a motion for summary judgment where there are no genuine disputes of material fact. *See Estate of Suskovich v. Anthem Health Plans of Va., Inc.*, 553 F.3d 559, 566-70

(7th Cir. 2009) (upholding district court's summary judgment determination that worker was

independent contractor); *Hopkins v. Cornerstone America*, 545 F.3d 338, 343-46 (5th Cir. 2008)

(upholding district court's summary judgment determination that workers were employees).

Several other federal courts that have been presented with the question of whether exotic

dancers are employees under the FLSA or independent contractors have found the dancers to be

employees.  *See, e.g.*, *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324 (5th Cir. 1993) (upholding

district court's determination that exotic dancers were "employees" under FLSA following bench

trial); *Morse v. Mer Corp.*, No. 1:08-cv-1389, 2010 WL 2346334 (S.D. Ind. 2010) (granting

summary judgment that exotic dancers were "employees" under FLSA); *Reich v. Priba Corp.*,

890 F. Supp. 586 (N.D. Tex. 1995) (finding exotic dancers to be "employees" under FLSA).

The Court will assess the relevant "economic reality" factors identified in *Morrison* based

on the undisputed facts here to determine if plaintiffs are entitled to summary judgment on their

employee status.

### i.    Control

The plaintiffs contend that the defendants exercised substantial control over the plaintiffs'

employment at The House.  *See* Pls. Mem. at 7.  The record reflects that The House paid each

dancer a fee of $30.00 to $50.00 per shift, depending on which shift she worked.  SMF ¶ 9;

Def.'s Resp. to Pls.' Interrog. No. 6.  The plaintiffs were required to "sign in" to a book when

they arrived to work.  SMF ¶ 11.  During a shift, The House required the dancers to perform "for

'thirty minutes on' and 'thirty minutes off.'"  *Id.* ¶ 5.; *see also* Pls.' Mem., Ex. 1, Deposition of

Darrell Allen ("Allen Dep.") at 36:5-21. The plaintiffs were required to follow a schedule posted

by the House that established which days they were required to work for the week.  SMF ¶ 12.

The House also enforced certain rules, such as "[n]o cussing, fighting, biting, scratching, or

drugs." *Id.* ¶ 6; Allen Dep. at 49:6-8.  Other rules related more directly to the plaintiffs' dancing, such as a ban against "fondling yourself on the stage."  Allen Dep. at 51:6-7.  Some violations of The House's rules were punished with monetary fines, although Allen testified that fines were not always enforced.  SMF ¶ 6; Allen Dep. at 52:14-16.

The defendants assert that the level of control they exercised over the plaintiffs is a fact question for trial, but they do not point to any record evidence contradicting the facts noted above or otherwise indicate any additional facts that would bear on this issue.  Defs.' Mem. at 3-4.  The defendants contend that The House "controlled how the performers danced to the extent of the government requirements of the District of Columbia," *id*. at 4, but it is apparent from the facts discussed above that the defendants exercised control over the plaintiffs' work that went far beyond merely assuring compliance with the law.

Viewing the evidence in the light most favorable to the defendants, the Court concludes that the The House exercised a significant degree of control over the plaintiffs' work. Accordingly, this factor weighs in favor of plaintiffs' employee status.

### ii.      Opportunity for Profit or Loss and Investment in the Business

The House earned gross income of more than $500,000 per year.  SMF ¶ 8.  Linda and A. Inc., the corporate entity that owns and operates the business, is wholly owned by the estate of James Allen, Darrell Allen's father, and the plaintiffs accordingly did not have any investment or stake in the company.  *See* Allen Dep. at 5:13-19.  In addition, The House appears to have completely managed all elements of the business besides the plaintiffs' dancing.  For example, The House and its managers determined cover charges, oversaw the club and made sure "everything [was] running productively," provided the music and the bartenders, and directed the other aspects of the enterprise.  *See* Allen Dep. at 20:20-21:7; 19:12-21; 64:18-65:8.  The

plaintiffs' earnings came only from their pay plus tips. *See* SMF ¶ 9; Pls.' Mem., Ex. 7,

Deposition of Quansa Leshelle Thompson ("Thompson Dep.") at 65:1-6.

Defendants contend that, in considering the opportunity for profit or loss in the business

factor, it is significant that "the Plaintiffs received substantial tip income from the customers."

Defs.' Mem. at 4. According to the defendants, "[t]he dancer earns, through her tips, based upon

the economic response of the customers." *Id.* at 6. This argument – that the ability to earn tips

suggests that a worker has an opportunity for profit or loss in the business consistent with

independent contractor status – has been routinely rejected by courts in other FLSA cases

involving exotic dancers.[5]

The ability of an exotic dancer to entice her customers to give large tips is known in the

industry as "hustling." *See Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343, 1350-52

(M.D. Fla. 1997). Courts have rejected the relevance of the "hustling" argument to the

opportunity for profit or loss factor of the economic reality test, finding that the appropriate

inquiry "has more to do with relative investments, with control over larger aspects of the

business, and with like forms of initiative." *Id.* As the Fifth Circuit explained in *Reich v. Circle*

*C. Investments, Inc.*, "once customers arrive at [the club], a dancer's initiative, hustle, and

costume significantly contribute to the amount of her tips. But [the club's owner] has a

significant role in drawing customers to its nightclub[]. . . . [The owner] is responsible for

advertisement, location, business hours, maintenance of facilities, aesthetics, and inventory of

beverages and food." 998 F.2d at 328 (concluding that the dancers "are far more closely akin to

---

[5] In making this argument, the defendants point to various portions of the deposition transcripts that purportedly indicate the range of tips the plaintiffs received. Defs.' Mem. at 5. The defendants have not provided the deposition transcripts to the Court, however, and therefore they are not in the record. Yet, even assuming *arguendo* that the defendants have accurately characterized the plaintiffs' testimony, the range of tips earned by the plaintiffs is not particularly relevant to the opportunity for profit or loss factor for the reasons explained herein. On a related note, the Court observes that the FLSA does provide, under certain specific circumstances, that employers may pay a reduced minimum wage to employees who receive a certain amount of compensation in tips. *See* 29 U.S.C. § 203(m). The defendants do not argue, however, that these FLSA "tip credit" provisions apply here.

wage earners toiling for a living, than to independent entrepreneurs seeking a return on their

risky capital investments.") (internal quotation marks omitted).  As the court in *Harrell* put it,

"That a dancer may increase her earnings by increased 'hustling' matters little. As is the case

with the zealous waiter at a fancy, four-star restaurant, a dancer's stake, her take and the control

she exercises over each of these are limited by the bounds of good service; ultimately, it is the

restaurant that takes the risks and reaps the returns." *Harrell*, 992 F. Supp. at 1352; *see also*

*Morse*, 2010 WL 2346334, at *4 (finding opportunity-for-profit factor weighed in favor of exotic

dancers' employee status).

    After considering the undisputed facts here, the Court finds that the opportunity for profit

or loss factor weighs in favor of employee status.

### iii.    Degree of Skill and Independent Initiative Required

    Many other courts have previously found that little specialized skill is required to be a

nude dancer.  *See, e.g.*, *Morse*, 2010 WL 2346334, at *5; *Harrell*, 992 F. Supp. at 1351; *Circle C*

*Invs.*, 998 F.2d at 328.  Defendants contend that "[a]rtistic performers in adult night clubs are

measured by the response of the patrons to their act" and that they will "demonstrate at trial that

artistic ability and the poise to convey to the audience a fantasy circumstance is not easy to

replicate [sic]."  Defs.' Mem. at 6-7.  While the Court does not rule out the possibility of the rare

case involving a form of nude dancing that reaches the level of high art, requiring extensive skill,

training, and expertise, the defendants' argument barely merits consideration here because

nothing in the record indicates that "artistic ability" had anything to do with eligibility to dance

at The House.  At his deposition, Defendant Allen succinctly explained the relevant

qualifications for performing at The House:

    A.   Well, in order to perform there, she would have to audition.
    Q.   And what –

A.  To see if she qualifies.
Q.  Okay.  And what makes her qualified or not?
A.  Beauty.
Q.  Okay. So someone has to be good-looking to work for you?
A.  Most definitely.

Allen Dep. at 29:13-30:1.

Viewing the record evidence in the light most favorable to the defendants, the Court

concludes that the lack of specialized skills required for the job weighs in favor of the plaintiffs'

employee status.

### iv.    Permanence or Duration of the Working Relationship

The more permanent the relationship, the more likely it is that a court will find a worker

to be an employee.  Plaintiff Lane testified that she danced at The House "on and off" during a

period of approximately 12 years.  Pls.' Mem., Ex. 5, Deposition of Eirene Lane ("Lane Dep.")

at 25:1-21.  Plaintiff Thompson testified that she danced at The House for five years.  Thompson

Dep. at 12:11-13:3.  Plaintiff McKay testified that she danced at The House from mid-October of

2007 until mid-February of 2008.  Pls.' Mem., Ex. 6, Deposition of Tamika Nicole McKay

("McKay Dep.") at 19:10-15.  Plaintiff Morales testified that she danced at The House for

approximately six months during 2008. Pls.' Mem., Ex. 4, Deposition of Jacemyein Elaina

Morales ("Morales Dep.") at 19:3-19.  Plaintiff Colbert testified that she danced at The House

from 2001 through 2008, although she did not recall exact dates.  Pls.' Mem., Ex. 8, Deposition

of Lakisha Denene Colbert ("Colbert Dep.") at 15:4-15.

This record is mixed with respect to the permanence of the dancers' relationships with

The House.  Accordingly, viewing the evidence in the light most favorable to the defendants, this

factor tips against employee status, but this single factor is certainly not dispositive.  Many of the

courts that have found exotic dancers to be employees under the FLSA did so despite finding the

employment relationship lacked a high degree of permanence. *See Circle C Invs.*, 998 F.2d at

328-29 ("The transient nature of the work force is not enough here to remove the dancers from

the protections of the FLSA."); *see also Morse*, 2010 WL 2346334, at *5.

### v.   Integral Part of the Employer's Business

The House is a nightclub that features nude exotic dancers.  SMF ¶ 7.  The defendants

understandably do not challenge the self-evident conclusion that nude dancers formed an integral

part of The House's business.  *See* Defs.' Mem. at 7-8.  Defendant Allen confirmed the obvious

at his deposition:

> Q.  Okay.  But this is – you do operate a strip club, correct?
> A.  That is correct.
> Q.  So that is the main feature –
> A.  Yes, ma'am.
> Q.  – are these girls?
> A.  Yes, ma'am.

Allen Dep. at 73:2-8

Instead, the defendants attempt to argue that while nude dancing was an integral part of

their business, none of the plaintiffs individually formed an integral part of the business: "The

patrons came to the business to see adult entertainment and, although possible, did not come to

see specific individuals. . . .What was integral to the business was the type of entertainment not

the individual entertainers."  Defs.' Mem. at 8.  The Court's inquiry, however, focuses on "the

extent to which *the work* is an integral part of the employer's business," not on the role of the

employee individually.  *Morrison*, 253 F.3d at 11 (emphasis added).  Courts consider this factor

because independent contractor relationships often involve work that is not integral to the

business – for example, if a pipe bursts in the nightclub and the club hires a plumber to fix it, the

plumber would typically be an independent contractor.  Here, the defendants admit that the

plaintiffs' work was integral to their business and their argument only serves to underscore their

perception that the plaintiffs were interchangeable workers whose labor provided the business's key service.

Accordingly, this factor weighs in favor of employee status.

### vi.   Consideration of All Factors

Viewing the evidence in the light most favorable to the defendants, the *Morrison* factors indicate that the plaintiffs are employees as a matter of law.  The only factor that does not clearly weigh in favor of employee status is the permanence or duration of the working relationship, and other federal courts have found exotic dancers to be employees under the FLSA despite the typically impermanent or transient nature of the work force in this industry. *See*, *e.g.*, *Circle C Invs.*, 998 F.2d at 328-29; *Morse*, 2010 WL 2346334, at *5.  The D.C. Circuit has instructed that "the final and determinative question must be whether the total[ity] of the [circumstances considered] establishes the personnel are so dependent upon the business with which they are connected that they come within the protection of the FLSA or are sufficiently independent to lie outside its ambit." *Morrison*, 253 F.3d at 11 (quotation omitted).  Here, "the economic reality is that the dancers are not in business for themselves but are dependent upon finding employment in the business of others." *Circle C Invs.*, 998 F.2d at 329.  As such, they are employees within the meaning of the FLSA and the District of Columbia labor laws and are entitled to minimum wage.

### b.   Defendant Allen's Status as an Employer

The next question for the Court is whether both defendants were the plaintiffs' "employers" under the FLSA and the District of Columbia labor laws.  Given the Court's finding that the plaintiffs were employees and not independent contractors, it appears undisputed that Linda and A. Inc. was the plaintiffs' employer. *See* Pls.' Mem. at 15; Defs.' Mem. at 8.  The

defendants argue, however, that Defendant Allen was not also an "employer" under the relevant laws.  Defs.' Mem. at 8.

To be liable for violations of the FLSA, the defendant must be an "employer." 29 U.S.C. § 206. The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  As with the definition of "employee," this definition is broadly construed to serve the remedial purposes of the FLSA and courts apply an "economic reality" test to determine whether a defendant is an employer. *See Morrison*, 253 F.3d at 10; *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 1, 5 (D.D.C. 2010).

"In applying the economic reality test, the Court considers 'the totality of the circumstances of the relationship between the plaintiff/employee and defendant/employer to determine whether the putative employer has the power to hire and fire, supervise and control work schedules or conditions of employment, determine rate and method of pay, and maintain employment records.'" *Ventura*, 738 F. Supp. 2d at 5 (quoting *Del Villar v. Flynn Architectural Finishes*, 664 F. Supp. 2d 94, 96 (D.D.C. 2009)). This test may show that more than one "employer" is liable for violations of the FLSA.  *Ventura*, 738 F. Supp. 2d at 5.

Here, it is undisputed that Allen is President of The House.  SMF ¶ 1.  During the time period in which the plaintiffs' claims arose, he was Vice-President and a manager.  *Id.* ¶ 2.; Defs.' Resp. to Pls.' Interrog. No. 2.  Defendant Allen supervised the plaintiffs, had control over hiring and firing, and enforced club rules governing the plaintiffs' conduct, including by imposing monetary fines.  SMF ¶¶ 3-6; Allen Dep. at 39:10-12.  All of the plaintiffs auditioned for Defendant Allen in order to be hired by The House.  SMF ¶ 10.

In opposing the plaintiffs' request for summary judgment as to Defendant Allen's employer status, the defendants do not provide or cite to any particular evidence in the record

that would contradict the facts cited above.[6]  The defendants simply argue that summary

judgment is inappropriate because James Allen, Defendant Allen's late father, was the sole

shareholder and "sole individual who directed the operation" of Linda and A. Inc., the corporate

entity that operates The House.  Defs.' Mem. at 8.  A legal interest in the corporate entity,

however, is not a prerequisite for employer status under the FLSA.  The FLSA's definition of

employer is broad enough to "encompass an individual who, though lacking a possessory interest

in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has

the power to act, on behalf of the corporation vis-a-vis its employees."  *Circle C Invs., Inc.*, 998

F.2d at 329 (citation omitted).  Moreover, while James Allen's estate remains the shareholder in

the corporate entity, Defendant Allen is a beneficiary of the estate and he advanced from Vice-

President of the corporation to President shortly following James Allen's death.[7]  Allen Dep. at

6:10-7:2; Defs.' Resp. to Pls.' Interrog. No. 2.

    The undisputed facts here indicate that Defendant Allen was at all times a senior

corporate officer and manager who exercised a high degree of operational control over the

circumstances of the plaintiffs' employment, including supervising and hiring the plaintiffs.

Taken together, the undisputed facts indicate that Allen was the plaintiffs' employer under the

economic reality test.  The fact that Allen did not have an ownership interest in the "employer"

corporation, which was owned by his father, is insufficient in these circumstances to remove him

from the scope of the FLSA's definition of an employer, which includes "any person acting

directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §

203(d); *see also Olivas v. A Little Havana Check Cash, Inc.*, 324 Fed. App'x. 839 (11th Cir.

2009) ("[T]o be personally liable as an 'employer,' a corporate officer must either be involved in

---

[6] Defendants' response on this issue consists of a single paragraph that contains no specific citations to any materials
in the factual record or to any relevant legal authorities.  *See* Defs.' Mem. at 8.
[7] Further details of the estate plan do not appear to be in the record.

the day-to-day operation or have some direct responsibility for the supervision of the

employee.") (citation and internal quotation marks omitted); *Ventura*, 738 F. Supp. 2d at 5-6

(granting summary judgment on plaintiffs' claim that restaurateur was employer under the

FLSA).

Accordingly, the plaintiffs' motion for partial summary judgment is granted with respect

to Defendant Allen's joint employer status. As the plaintiffs' employers, both Allen and The

House are liable for violations of the FLSA and the District of Columbia wage laws.

**c.  Liquidated Damages**

The plaintiffs have also moved for summary judgment on the availability of liquidated

damages under the FLSA.

An employer who violates the FLSA minimum wage provisions is ordinarily "liable to

the employee or employees affected in the amount of their unpaid minimum wages . . . and in an

additional equal amount as liquidated damages." 29 U.S.C. § 216(b). This award of liquidated

damages is mandatory unless "the employer shows to the satisfaction of the court that the act or

omission giving rise [to the FLSA action] was in good faith and that he had reasonable grounds

for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. This

good faith defense to liquidated damages requires "an affirmative showing of a genuine attempt

to ascertain what the law requires," not simply the absence of bad faith. *Danesh v. Rite Aid*

*Corp.*, 39 F. Supp. 2d 7, 13 (D.D.C. 1999) (citation omitted).

Here, it is undisputed that The House did not pay the plaintiffs minimum wage. *See* SMF

¶ 9 (establishing that The House paid the plaintiffs $30.00-$50.00 per shift, with shifts lasting

10.5 or 11 hours, during a period in which the minimum wage ranged from $5.85 to $7.25 per hour).[8]

According to the plaintiffs, the defendants "can point to no authority or good faith basis that they relied upon to determine how they paid their dancers." Pls.' Mem. at 22.  When asked why The House paid their dancers the way they did, Defendant Allen simply answered that the payment system was determined by James Allen and Defendant Allen went along with the "program."  See id.; Allen Dep. at 40:21-41:10.  This perfunctory response is plainly insufficient to satisfy the elements of the defense to liquidated damages in 29 U.S.C. § 260.

The defendants respond that the record is "insufficiently developed" for the Court to reach any conclusion on liquidated damages, but the defendants do not explain what additional factual information would bear on this question.  They do not point to any pertinent facts in the record, attach any affidavits, or identify evidence to be developed at trial that could establish the required showing.  Even their memorandum of law does not propose any good faith basis for their violations.  See Defs.' Mem. at 9.  The court therefore finds that the defendants have failed to show that they had reasonable grounds for believing that their wage policy was not a violation of the FLSA.  See Danesh, 39 F. Supp. 2d at 13 (granting summary judgment awarding liquidated damages under the FLSA).

### III.    CONCLUSION

For the reasons stated above, the plaintiffs' motion for partial summary judgment is granted.  Viewing the undisputed facts in the light most favorable to the defendants, the Court finds that, as a matter of law, the plaintiffs were the defendants' "employees" under the FLSA,

---

[8] Plaintiffs also claim that The House took deductions from this pay, inter alia, in the form of fines and mandatory tips to The House's disc jockey.  SMF ¶ 14.  Defendants have denied these claims in a conclusory fashion.  Defs.' Mem. at 2, 9.  The Court finds that since defendants' liability for violating the FLSA is clear, the determination of the extent and amount of the fines or mandatory tips imposed on the plaintiffs goes to the question of damages and, accordingly, should be reserved for a later phase of the litigation.

DCMWA, and DCWCPL; both defendants were "employers" under the FLSA, DCMWA, and DCWCPL; and the plaintiffs are entitled to liquidated damages under the FLSA.

Within twenty days of the issuance of this memorandum opinion and the accompanying order, the parties shall file a joint status report proposing a mechanism and schedule for resolving the remaining issues in this case – namely, the question of damages.  After receiving the parties' joint report, the Court will schedule a status conference if necessary.


DATED: April 29, 2011                                    /s/ *Beryl A. Howell*

                                                         BERYL A. HOWELL
                                                         United States District Judge