UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

QUANSA THOMPSON, *et al.*,

    Plaintiffs

    v.

HOUSE, INC., *et al.*,

    Defendants.

Civil Action No. 09-1942 (BAH/JMF)

REPORT AND RECOMMENDATION

Introduction

Plaintiffs were exotic dancers at a nightclub called "The House." They received tips from the customers when or after they danced. Having heard the testimony at a recent hearing, I am convinced that the owner/manager of the club believed that the plaintiffs' receiving tips began and ended any financial obligation to them. When these plaintiffs sued him, seeking their minimum wages, he defended on the grounds that they were independent contractors. Judge Howell, however, rejected that contention, concluded that they were employees, and appointed me Special Master to determine damages. She directed me to "prepare and file a 'Report and Recommendation' containing findings of fact and conclusions of law consistent with the Court's Order dated April 29, 2011, granting summary judgment on liability to Plaintiffs." Order [#36].

**Findings of Fact**

1. Plaintiffs are Quansa Thompson, Tamika McKay, Lakisha Colbert, Jacamyein Morales, and Eirene Lane.

2. The period of time at issue that is within the statute of limitations is from October 14, 2006 to October 14, 2009.

3. There were two shifts at the House, an early shift of 12 hours and a later shift of 10 hours.

4. Quansa Thompson, Tamika McKay, and Eirene Lane worked both shifts equally.

5. Jacamyein Morales worked only the early shift.

6. On average, Lakisha Colbert worked 4 early shifts and 2 later shifts per week.

7. The House assessed dancers various charges to dance and to pay for the disc jockey to play the music to which they danced.  They also might have to contribute a certain amount for contributions to a birthday party for one of their fellow dancers or a holiday party.  On occasion, they were fined for being late for work or for being late when it was their turn to dance.

8. The House did not maintain any payroll records whatsoever whether prepared by an employee of the House or a certified public accountant.

9. There is no written documentation whatsoever of how much money the plaintiffs received in tips or of what fines or other assessments they paid.

10. There was a series of sign in books on the premises that were supposed to be used to note the arrival and departure times of the plaintiffs.  But, Darrell Allen, the proprietor of the House who served as manager in the period in question, testified

        that he did not monitor the use of these books.

11.      Allen did not personally record the times of arrival and departure of the dancers.

12.      My examination of the sign in books indicate that the persons listed who were dancers were listed (if listed at all) by their stage names as opposed to their real names.

13.      The handwriting in the book differs from page to page and there is no evidence whatsoever as to who actually wrote what is in the book and when.

14.      On occasion, all the entries in the sign in books for a certain day are in the same hand while on other occasions the entries are by different hands.

15.      It is impossible to use the sign in books to estimate, let alone, ascertain when plaintiffs worked and for how long.

## Analysis

An evidentiary hearing regarding damages was held before me on January 3 and 4, 2012. Plaintiffs testified as to the average number of shifts they worked per week, and Quansa Thompson also provided a spreadsheet that represented her records of the shifts she worked. To rebut this evidence defendants offered the oral testimony of Darrell Allen and the sign in books used by defendants that were said to keep track of when employees were working and their shifts.

    As I have stated, it is clear to me that the House and Allen believed that the tips the dancers received were their compensation and indeed the House created a structure whereby the dancers paid for the privilege of dancing and other assessments. This was an entirely cash business between the House and the dancers and they settled up at the close of business.

    Obviously, the House never complied either with the statute pertaining to required record

keeping or to the clear guidance by the Department of Labor of how to calculate the minimum wage for employees who are paid tips by the employer's customers. See U.S. Dept. of Labor, Wage and Hour Div., Fact Sheet # 15, Tipped Employees Under the Fair Labor Standards Act, available at http://www.dol.gov/whd/regs/compliance/whdfs15.htm (last visited on May 17 2012). Instead, the House put all its eggs in the basket of insisting that the dancers were independent contractors to whom it did not owe the legal duties due an employee. When Judge Howell rejected that contention, the House, having never created the records in the first place, had nothing upon which it could premise any contention that it complied with the law pertaining to employees who receive tip income. It was left with a sign in book that is useless in ascertaining with any accuracy when plaintiffs worked. Confronted with the situation, the courts' answer has been clear: an employee, due a minimum wage, cannot be denied it because of an employer's failure to maintain records. Instead, the employee's reasonable estimate of the hours worked will suffice.

The seminal case concerning actions brought for unpaid wages or overtime compensation when records are not available is Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946). In Mt. Clemens, the Supreme Court set out that an employee bringing suit "has the burden of proving that he performed work for which he was not properly compensated." 328 U.S. at 687. However,

> where the employer's records are inaccurate or inadequate . . . [t]he solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty. . . .

Id. Rather, the Court held that,

> [i]n such a situation . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work *as a matter of just and reasonable inference*. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. *If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate*.

Id. at 687-88 (emphasis added).

That is the precise situation here: the House produced no credible evidence whatsoever, let alone "precise" evidence of the hours worked. Plaintiffs' estimates, even if approximate, prevail.

Following the hearing, the parties submitted post trial submissions detailing their proposed damages, based on hours worked and duration of employment. See Plaintiffs' Notice of Damages Calculations [#48]; Defendants' Memorandum of Law and Notice of Damages Calculation [#49]. Following defendants' submission, I issued an Order to show cause why defendants' submission should not be stricken in its entirety as it relied on inadmissible evidence. Order [#50]. Defendants resubmitted their submission and based their calculations of proposed damages solely on the testimony of Allen and the sign in books. Opposition and Response to Show Cause Order [#51]. Based on these submissions, I now determine that defendants "did not maintain proper payroll records pursuant to their obligations under 29 U.S.C. § 211(c) (2006)," and therefore I will "approximate damages under the FLSA based on 'just and reasonable' inferences." Ventura v. Bebo Foods, Inc. 738 F. Supp. 2d 8, 13 (D.D.C. 2010) (quoting

Anderson, 328 U.S. at 686-88). "When assessing damages under the Anderson standard, a court may draw inferences from oral testimony, sworn declarations, and whatever relevant documentary evidence a plaintiff is able to provide." Id. (internal citation omitted).

I find that the only evidence on record that permits 'just and reasonable inferences' is the oral testimony given by the plaintiffs during the hearing and the spreadsheet produced by Thompson detailing her hours. I therefore credit and find accurate plaintiffs' post-hearing submission, which memorialized their testimony during the hearing regarding the number of shifts worked per week and the number of weeks worked.

On the other hand, while plaintiffs also testified as to customary fines and charges imposed by defendants, there was no uniformity in their testimony and no corroborating evidence. It was simply too defuse and based on recollections that were so imprecise and unclear that there is no premise upon which to say that these assessments came out of the plaintiffs' tips on a consistent daily or weekly basis. I have therefore disregarded them in my calculations.

Damages for plaintiffs are calculated in accordance with plaintiffs' submission as to the hours worked as follows:

| Plaintiff | Weeks In Relevant Employment Period | Hours Worked Per Week | Total Minimum Wage/Overtime Owed for Work Period | Liquidated Damages in an Equal Amount | Total Damages |
|---|---|---|---|---|---|
| Quansa Thompson | 153 | 49.5 | $60,267 | $60,267 | $120,534 |
| Tamika McKay | 18 | 55 | $7,875 | $7,875 | $15,750 |
| Lakisha Colbert | 39 | 68 | $22,386 | $22,386 | $44,772 |

| | | | | | |
|---|---|---|---|---|---|
| Jacemyein Morales | 46 | 66 | $37,370 | $37,370 | $74,740 |
| Eirene Lane | 95 | 55 | $44,918 | $44,918 | $89,836 |

## Conclusions of Law

1.  The House did not maintain records of the number of hours worked by plaintiffs.

2.  Plaintiffs did not maintain any records of the assessments made against them.

3.  The estimates provided by plaintiffs and their counsel of the number of hours they worked are reasonable and credible.

## Final Recommendations

I recommend that judgment be entered in favor of plaintiffs and against the defendants in the amounts just indicated and that plaintiffs be thereafter permitted to file an application for attorneys fees and costs.

**Failure to file timely objections to the findings and recommendations set forth in this report may waive your right of appeal from an order of the District Court adopting such findings and recommendations.  See Thomas v. Arn, 474 U.S. 140 (1985).**

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE